# In the United States Court of Federal Claims

No. 21-2016C
Filed: July 1, 2024
NOT FOR PUBLICATION

| |
|---|
| **SEAN J. DILLON,** |
|    *Plaintiff*, |
| v. |
| **UNITED STATES,** |
|    *Defendant*. |

## MEMORANDUM OPINION AND ORDER

***HERTLING*, Judge**

  The plaintiff, Sean J. Dillon, an inmate at the United States Disciplinary Barracks, Fort Leavenworth, and a former soldier of the United States Army ("Army"), proceeding *pro se*, filed this action on October 7, 2021.

  On April 28, 2016, the plaintiff was adjudged guilty by a general court-martial of sexually assaulting his two daughters and was sentenced to 30-years confinement, reduction to the grade of E-1, and a dishonorable discharge.[1] The plaintiff claims that his sentence is illegal because the Army lacked jurisdiction over him under the Uniform Code of Military Justice ("UCMJ") because he had been notified that he was to be medically retired on November 30, 2015, several months before his court-martial. The plaintiff argues that the revocation of the order that he be retired and the November 25, 2015, notice of the charges against him were ineffective, and that he retired from the Army on November 30, 2015, so that the April 2016 court-martial therefore lacked jurisdiction to try him. The plaintiff seeks a declaration that his right to due process under the fifth amendment was violated, an injunction against further violations of his rights, the correction of his military records to show he was medically retired on November 30, 2015, and back pay of his retirement annuity. Liberally construing the plaintiff's complaint, he also argues that once he had been approved for medical retirement, federal law, 10

---

[1] Although the complaint does not identify the crimes of which the plaintiff was convicted, they are identified in the referenced appellate decision that affirmed his convictions. (Complaint at ¶ 41 (citing *United States v. Dillon*, No. Army 20160324, 2019 WL 302073 (Army Ct. Crim. App. Jan. 17, 2019)).)

U.S.C. § 1201, requires the Army to provide him medical-retirement pay despite the intervening court-martial.

The defendant has moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). The defendant argues that the plaintiff's complaint is a collateral attack on his court-martial conviction, over which this court can only exercise jurisdiction in narrow circumstances that are not met here. Alternatively, the defendant argues that the plaintiff has failed to state a claim because, on the face of the complaint, the plaintiff's retirement orders had been revoked before his retirement, so that he was lawfully subject to UCMJ jurisdiction.

The complaint fails to identify a basis for Tucker Act jurisdiction over the plaintiff's claims relating to his contention that the court-martial lacked jurisdiction over him. That claim is dismissed pursuant to RCFC 12(b)(1) and 12(h)(3). As for the claim that the Army was required to pay the plaintiff his medical-retirement pay notwithstanding his court-martial, the complaint is dismissed for failure to state a claim pursuant to RCFC 12(b)(6).

I.  **BACKGROUND**[2]

The plaintiff enlisted in the Army on June 24, 1996, and eventually reached the rank of sergeant first class, E-7. Compl. Ex. A; Compl. Ex. F.) During his service, he suffered several combat-related injuries, including two traumatic brain injuries, and was diagnosed with post-traumatic stress disorder. (Compl. at ¶¶ 2, 24.) These injuries led a Medical Evaluation Board to determine in December 2013 that the plaintiff was not fit for active duty. (Compl. at ¶ 27.) In November 2014, a Physical Evaluation Board ("PEB") confirmed that the plaintiff's injuries were permanent and approved his retirement on medical grounds. (Compl. at ¶ 28.) Because he appealed certain aspects of the PEB's decision in February and March 2015, the plaintiff's retirement was delayed. (Compl. at ¶ 29.) In April 2015, the U.S. Army Physical Disability Agency, on behalf of the Secretary of the Army, approved the plaintiff's medical retirement under the Temporary Enhanced Disabled Retired List under Army Regulation ("AR") 630-45, ¶ 4-29(b)(2), because the plaintiff was between his 18th and 20th year of service. (Compl. at ¶ 30.) The Secretary of the Army ordered the plaintiff's involuntarily retirement no later than November 30, 2015. (*Id.*)

After a delay caused by surgery, between August and November 2015, the plaintiff engaged in tasks in preparation for his medical retirement. (Compl. at ¶¶ 32-34.) These tasks included "clear[ing] the installation of any administrative connections, receiv[ing] final accounting of pay, and receiv[ing] a DD Form 214" ("DD-214"). (Compl. at ¶ 34.) The DD

---

[2] Because the defendant has filed a motion to dismiss, the complaint's well-pleaded factual allegations are treated as true for purposes of RCFC 12(b)(6), *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and for purposes of RCFC 12(b)(1), unless controverted by the defendant. *See Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

Form 214 noted a disability "separation date this period" of November 29, 2015. (Compl. Ex. A at 1.)

On November 3, 2015, the plaintiff's retirement orders were revoked by an order from U.S. Army Installation Management Command either by or on behalf of the chief of the military personnel division. (Def.'s Mot. to Dismiss Ex. A at 2.)[3] On November 25, 2015, the plaintiff was served a charge sheet (DD Form 458). (Compl. at ¶ 35.) Although the plaintiff informed his command of his view that he had already been medically retired, rendering the UCMJ charges against him invalid, his command refused to let him leave his unit or retire. (Compl. at ¶ 37.) In April 2016, the plaintiff received via certified mail an "official notification" from the Army that he had been medically retired on November 30, 2015. (Compl. at ¶ 38.)

The plaintiff was tried by a general court-martial on April 26-28, 2016. (Compl. at ¶ 39.). The plaintiff, through counsel, argued that he had been medically retired in November 2015 and was beyond the court-martial's jurisdiction, but the military judge rejected that defense. (Compl. at ¶ 38.) The plaintiff was convicted of sexually assaulting his two daughters. *See United States v. Dillon*, No. Army 20160324, 2019 WL 302073, at *1-2 (Army Ct. Crim. App. Jan. 17, 2019). In October 2016, the convening authority modified the period of confinement to 29 years and 11 months but otherwise approved the conviction. *Id.* at *1.

The plaintiff appealed to the Army Court of Criminal Appeals ("ACCA"), arguing through counsel that he had suffered an illegal post-trial punishment and that the court-martial had lacked jurisdiction over him. *Id.* at *1-2, 2 n.2; (*see* Compl. at ¶ 41.) Although the ACCA determined that the plaintiff had suffered an illegal post-trial punishment in violation of Article 57 of the UCMJ when his company commander publicly ripped the plaintiff's rank insignia off his uniform immediately after his conviction, it affirmed "the findings of guilty" and affirmed a sentence of "a dishonorable discharge, reduction to the grade of E-1, and confinement for twenty-nine years ten months and twenty-three days." *Dillon*, 2019 WL 302073 at *2-3. The ACCA rejected the plaintiff's argument concerning personal jurisdiction in a footnote, concluding "[a]lthough appellant was close to retirement before any charges were preferred, he was not, in fact, retired." *Id.* at *2 n.2. The plaintiff subsequently petitioned the U.S. Court of Appeals for the Armed Forces to review the case; that petition was denied without comment. *United States v. Dillon*, 79 M.J. 189 (C.A.A.F. 2019); (*see* Compl. at ¶ 42). On March 14, 2019, the plaintiff received a revised DD-214, and on July 24, 2020, was dishonorably discharged. (Compl. at ¶¶ 43-44; Compl. Ex. D)

---

[3] The plaintiff's complaint contends that the Army revoked his order to retire (Compl. at ¶ 61), although it does not specifically reference this order to retire provided by the defendant. Consideration of this document is proper for purposes of RCFC 12(b)(1) despite not being included or directly referenced in the complaint because it controverts the timeline of events established by the plaintiff's complaint. This document need not be considered for purposes of RCFC 12(b)(6) because, as discussed below, the military judge's finding that the plaintiff was not medically retired before his court-martial cannot be questioned in this court.

On August 6, 2021, the plaintiff filed a petition for a writ of habeas corpus in the United States District Court for the District of Columbia. No. 1:21-cv-02124, ECF 1 (D.D.C.). The plaintiff argued that the court-martial had lacked jurisdiction over him because he had been medically retired on November 30, 2015. D.D.C. Compl. at ¶¶ 1, 2(a) 22, 65-66.

## II. PROCEDURAL HISTORY

### A. Proceedings in this Court

While his habeas petition was pending, on October 7, 2021, the plaintiff filed this complaint. On December 6, 2021, the defendant filed a motion to dismiss. On December 17, 2021, Judge Campbell-Smith stayed the case and referred the plaintiff to the court's pro bono attorney-referral program. That referral failed to secure the plaintiff counsel, and on June 30, 2022, the stay was lifted. On October 31, 2022, the plaintiff filed his response to the motion to dismiss. On December 14, 2022, the defendant filed its reply.

On August 15, 2023, the plaintiff filed a motion for leave to supplement his opposition; that motion was granted. On September 19, 2023, the defendant filed a motion to stay the case pending action by the Supreme Court on a petition for certiorari in *Larrabee v. Del Toro*, No. 22-1082. That order was granted. On October 10, 2023, the Supreme Court denied the petition. *Larrabee v. Del Toro*, 144 S. Ct. 277 (2023).

After Judge Campbell-Smith retired, the case was reassigned to the undersigned, and on May 6, 2024, the stay was vacated. Each party was given to May 31, 2024, to file a supplemental brief to address "any additional authority decided since the motion was briefed and to address whether the decision in *Labonte v. United States*, 43 F.4th 1357 (Fed. Cir. 2022), dealing with Army Regulation 635-40, has any impact on [the plaintiff's] case." (May 6, 2024, Order.) The defendant filed its supplemental brief on May 30, 2024, but the plaintiff requested additional time and was given until June 28, 2024, to file his supplemental brief. Despite having been given the additional time, the plaintiff, the plaintiff did not file a supplemental brief by the deadline.

### B. Parallel Proceedings in the District Courts

While this case was pending, the D.C. district court dismissed the plaintiff's habeas petition on March 31, 2021, for lack of jurisdiction. The court held that only the district court with jurisdiction over the plaintiff's custodian, *i.e.*, the District of Kansas, had jurisdiction over the plaintiff's petition. *Dillon v. Wormuth*, No. 1:21-CV-02124, 2022 WL 971087, at *3 (D.D.C. Mar. 31, 2022).

On May 4, 2022, the plaintiff filed a petition for a writ of habeas corpus in the District of Kansas. He again sought his release based on his claim that he was not subject to the court-martial's jurisdiction. D. Kan., Case No. 5:22-cv-3088, Compl. at ¶¶ 1-3. The plaintiff moved for appointment of counsel. The district court granted the motion and appointed the district's Federal Public Defender as counsel on May 6, 2022. D. Kan., Case No. 5:22-3088, May 6, 2022, Order. The district court denied the plaintiff's petition on April 30, 2024. *Dillon v. Payne*, No.

22-3088, 2024 WL 1885504 (D. Kan. Apr. 30, 2024). The plaintiff appealed the denial of his habeas corpus petition on May 2, 2024. No. 24-3065 (10th Cir.).

### III.    JURISDICTION

Before considering the merits of any claim, a federal court must first determine that it has jurisdiction to hear the case. Jurisdiction is a threshold matter that a court must resolve before it addresses the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). A federal court has a responsibility to ensure that it has jurisdiction over any claims asserted. *See, e.g.*, *St. Bernard Parish Gov't v. United States*, 916 F.3d 987, 992-93 (Fed. Cir. 2019).

The jurisdiction of the Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491(a)(1),[4] which provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act waives the sovereign immunity of the federal government to allow jurisdiction in the Court of Federal Claims if a claim is: "(1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the [United States], or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained," unless arising from a tort. *Curie v. United States*, 163 Fed. Cl. 791, 799 (2022) (citing, *inter alia*, *United States v. Navajo Nation*, 556 U.S. 287, 289-90 (2009)).

The Tucker Act itself does not establish jurisdiction. Rather, a plaintiff must also allege an independent claim based on a money-mandating statute or provision of law. *Navajo Nation*, 556 U.S. at 290. A provision of law is money-mandating if it "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Testan v. United States*, 424 U.S. 392, 400 (1976) (quoting *Eastport S. S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967)).

---

[4] The plaintiff's complaint cites to 28 U.S.C. § 1491(b), which governs the court's jurisdiction in procurements protests. (Compl. at ¶ 1.) As this case plainly is not a procurement protest, the plaintiff probably intended to cite to 28 U.S.C. § 1491(a). To the extent the plaintiff is attempting to invoke the court's jurisdiction to award declaratory and injunctive relief under 28 U.S.C. § 1491(b)(2), such relief is only available in procurement protests. Nonetheless, the court has authority under 28 U.S.C. § 1491(a)(2) to issue the equitable relief the plaintiff seeks if the relief is collateral to a money judgment, which would be provided by the claim for back pay.

The plaintiff bears the burden of showing that his complaint raises a claim within the limited jurisdiction of the Court of Federal Claims. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). The plaintiff is proceeding *pro se*. As a result, his pleadings are entitled to a more liberal construction than they would be given if prepared by a lawyer. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*). Giving a *pro se* litigant's pleadings a liberal construction does not divest the *pro se* plaintiff of the responsibility of demonstrating that the complaint satisfies the jurisdictional requirements that limit the types of claims the Court of Federal Claims may entertain. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

## IV. STANDARDS OF REVIEW

To determine subject-matter jurisdiction under RCFC 12(b)(1), a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true. *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012). A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts. *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)). In such cases, courts may review evidence outside the pleadings. *Id.*

The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence. *Trusted Integration, Inc.*, 659 F.3d at 1163. If a court finds that it lacks subject-matter jurisdiction over any of the plaintiff's claims, RCFC 12(h)(3) requires dismissal of those claims.

Under RCFC 12(b)(6), dismissal "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). The court must both accept as true a complaint's well-pleaded factual allegations, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and draw all reasonable inferences in favor of the non-moving party, *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To avoid dismissal under RCFC 12(b)(6), a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## V. DISCUSSION

The plaintiff alleges two basic violations of law. First, the plaintiff alleges his rights under the Fifth Amendment's Due Process Clause were violated when he was subjected to a court-martial and denied medical retirement. (Compl. at ¶¶ 48-52.) Second, the plaintiff claims that his medical retirement was wrongfully revoked, and instead he was medically retired on November 30, 2015. (Compl. at ¶ 59-63.)

These two alleged violations are derived from the plaintiff's repeated references to issues of personal jurisdiction as well as statutes and regulations. Based on these references, the plaintiff's complaint is liberally construed to contain two claims: first, that he was medically retired on November 30, 2015, such that the 2016 court-martial lacked jurisdiction over him, (*see* Compl. at ¶¶ 1(b), 38-39, 41, 50); second, even if the 2016 court-martial had jurisdiction, governing law nonetheless required that the plaintiff be medically retired, and the failure to do so was a violation of 10 U.S.C. §§ 1201-02 (*see* Compl. at ¶¶ 60-63.) For these violations, the plaintiff seeks the correction of his military records to note his placement on the Temporary/Enhanced Disability Retired List as of November 30, 2015; the award of the retirement pay due to him since July 1, 2017; a declaration to have his court-martial was void *ab initio*; and an award of attorney's fees. (Compl. at pg. 9-10.)

The defendant has moved to dismiss both for lack of subject-matter jurisdiction and failure to state a claim. As to jurisdiction, the defendant argues that court-martial proceedings are only subject to review in the Court of Federal Claims in rare cases, and that the plaintiff's case is not on such case. On the merits, the defendant argues that because the plaintiff's complaint makes clear he had not been medically retired before his court-martial was initiated and had never become medically retired, he is not entitled to relief.

## A.   RCFC 12(b)(1)

If the plaintiff's complaint merely sought a review of a disability determination, his case would undoubtably fall within the court's jurisdiction; section 1201 of Title 10 has long been established to be money-mandating. *Fisher v. United States*, 402 F.3d 1167, 1174-75 (Fed. Cir. 2005) (citing *Sawyer v. United States*, 930 F.2d 1577 (Fed. Cir. 1991)).[5] The plaintiff, however, effectively seeks to obtain collateral review of the determination by his court-martial that it had jurisdiction over him by arguing he was medically retired on November 30, 2015. The court-martial rejected this defense as "'meritless" and determined that the "official notification" the plaintiff had received in April 2016 regarding his retirement was "'invalid.'" (Compl. at ¶ 38.) To the extent the plaintiff seeks review of that question of fact that was addressed and resolved by the court-martial, the court lacks jurisdiction to review this issue.

The Court of Federal Claims "may only review those court-martial matters in which the plaintiff alleges and proves that: (1) significant constitutional defects have deprived the plaintiff

---

[5] To the extent the plaintiff attempts to rely on other statutes or constitutional provisions, they are not money-mandating and cannot provide jurisdiction in the Court of Federal Claims. These asserted authorities include the due process clause of the fifth amendment, *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995), and various statutory provisions dealing with the jurisdiction and other aspects of the district courts, including 28 USC §§ 1331 (district court federal question jurisdiction), 1361 (district court mandamus jurisdiction), 1391 (venue), and 2201 (declaratory judgment), *see Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) ("Section 2201 of Title 28 . . . does not provide any basis for jurisdiction of the Court of Federal Claims.").

of due process; (2) fundamental fairness was lacking in the court-martial proceeding; and (3) the review does not simply amount to a retrying or reweighing of the evidence." *Matias v. United States*, 19 Cl. Ct. 635, 642, *aff'd*, 923 F.2d 821 (Fed. Cir. 1990) (citing *Bowling v. United States*, 713 F.2d 1558, 1560-61 (Fed. Cir. 1983)); *see also Moore v. United States*, 61 Fed. Cl. 146, 151 (2004), *aff'd*, 121 F. App'x 857 (Fed. Cir. 2005) (same). Indeed, even when the Court of Federal Claims can exercise jurisdiction over courts-martial, it cannot re-examine factual questions resolved by them. *Flute v. United States*, 210 Ct. Cl. 34, 38 (1976) ("[t]his court does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal"); *Artis v. United States*, 205 Ct. Cl. 732, 740 (1974) ("we have no authority to retry the facts of a court-martial proceeding"); *Taylor v. United States*, 199 Ct. Cl. 171, 174 (1972) ("[t]his court will not reweigh the evidence presented at plaintiff's court-martial in order that it might substitute its judgment for that of the military trial court").

The plaintiff does not identify any specific constitutional defects that infected his court-martial proceedings other than a violation of his due process rights caused by the alleged lack of personal jurisdiction over him. Even accepting this claim as a significant constitutional defect, however, it is unclear how the court-martial's exercise of jurisdiction would amount to a fundamental lack of fairness. If anything, the complaint makes clear that the plaintiff was represented by counsel who raised this issue before the court-martial, which concluded the plaintiff's jurisdictional defense was "'meritless.'" (Compl. at ¶ 38.) The plaintiff, still represented by counsel, had the opportunity to present this issue again on appeal before the ACCA, which rejected the argument. *Dillon*, 2019 WL 302073, at *1 n.2 ("Although appellant was close to retirement before any charges were preferred, he was not, in fact, retired."). Further, the plaintiff, represented by different counsel, has raised the issue of the court-martial's purported lack of jurisdiction over him in his habeas petition before the Kansas district court. The district court held the claim was meritless because the plaintiff had not been medically retired on November 30, 2015. *Dillon*, 2024 WL 1885504, at *2.

In short, the plaintiff has already had ample opportunity to raise his claim of jurisdictional defect, and in no case does he appear to have identified any issue with his court-martial that could constitute a denial of fundamental fairness. Because "'a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten . . . that the proceeding is more a spectacle . . . or trial by ordeal . . . than a disciplined contest,'" an allegation of a lack of fundamental fairness is a high burden to satisfy. *Bowling*, 713 F.2d at 1561 (quoting *United States v. Augenblick*, 393 U.S. 348, 356 (1969)). The plaintiff's complaint does not satisfy that high burden.

The court thus lacks jurisdiction over the plaintiff's claims that seek to establish that the plaintiff was medically retired on November 30, 2015. The court may not re-examine the court-martial's findings, including its rejection of the plaintiff's jurisdictional defense.[6]

---

[6] Even if the plaintiff's claim were to be considered on the merits, the plaintiff would not prevail. The plaintiff was not medically retired on November 30, 2015. Army Regulation 635-

B.    **RCFC 12(b)(6)**

The complaint effectively alleges that once the Army determined that the plaintiff met the standards required to be medically retired, the Army had to medically retire him.  (*See* Compl. at ¶¶ 60-63.)  This claim is repeated in the plaintiff's response to the motion to dismiss, in which he argues that 10 U.S.C. § 1201 and AR 635-40 impose a "non-discretionary duty mandating [that the p]laintiff 'will be permanently retired.'"  (Pl.'s Resp. at 4-6 (quoting AR 635-40 ¶ 5-7(b), (d)(1)).)  Addressing the question of whether the Army was required by law to medically retire the plaintiff once he had been found to meet the conditions under 10 U.S.C. § 1201 despite the fact he had been convicted by a court-martial and dishonorably discharged is a legal question that does not require a reexamination of the facts determined by the court-martial.  Thus, this claim falls within the jurisdiction of the Court of Federal Claims.

Under a liberal construction of his complaint, the plaintiff alleges that he became entitled to retirement pay under 10 USC § 1201 as soon as the Army determined that he met the qualifications for medical retirement, notwithstanding his court-martial.  The plaintiff's complaint, however, does not plausibly allege facts that show that he was still entitled to a medical retirement pay after his court-martial.

The complaint reflects that the Army found that the plaintiff met the requirements of 10 U.S.C. § 1201 before his court-martial, as he was originally ordered to be medically retired effective on November 30, 2015.  (Compl. at ¶ 1(b), (d), 30.)  That finding does not, however, entitle the plaintiff to medical retirement while he is serving his jail sentence, because 10 U.S.C. § 1201 does not provide any required timeline for the processing of medical retirement benefits.

Further, it is a reasonable inference from the relevant statutes that a disabled soldier is not owed retirement pay until he is retired.  *See* 10 U.S.C. §§ 1201 (after determining a soldier is unfit to perform the duties of his rank "because of physical disability . . . the Secretary may retire the member, with retired pay computed under section 1401 of this title . . ."); 1202 (" the Secretary shall . . . place the member's name on the temporary disability retired list, with retired pay computed under section 1401 of this title"); and 1401 (providing the formula for calculating "[t]he monthly retired pay of a person entitled thereto").  This reading makes sense because a non-retired soldier usually is receiving regular basic pay.  *See* 10 U.S.C. § 1201(c) (specifying that eligible members for medical retirement must be "entitled to basic pay" except for members

---

40 (2006) provides that a soldier who is "charged with an offense under the [UCMJ] or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge, may not be referred for, or continue, disability processing" until the matter is resolved.  AR 635-40 ¶ 4-1 (2006).  Although the plaintiff raises questions as to whether the proper authority revoked his retirement order, this regulation provided the necessary authority, and indeed required, the Army to revoke the plaintiff's retirement order on November 3, 2015, because the plaintiff had not been placed on the Temporary Disability Retired List as of the date the Army initiated charges against the plaintiff.

who are on an "authorized absence (A) to participate in an educational program, or (B) for an emergency purpose").

Army Regulation 635-40 ¶ 4-2 (2006) controls the resolution of the plaintiff's claim because he had not been medically retired before his court-martial. That regulation provides that "[a] Soldier may not be referred for, or continue, disability processing if under sentence of dismissal or punitive discharge." The current version of AR 635-40 incorporates the same restriction in ¶ 4-3(e), which provides "Soldiers may not be referred for, or continue in, disability processing if under military sentence of dismissal or punitive discharge unless the sentence is suspended." The provision continues, "[t]he Soldier may not be discharged through the [Disability Evaluation System] process until the period of suspension has ended and *the punitive discharge or dismissal has been disapproved*." (Emphasis added.)

While there is little caselaw interpreting these provisions, what precedent exists supports the conclusion that the plaintiff is not eligible for medical retirement benefits while under a sentence of a dishonorable discharge. In *Labonte v. United States*, AR 635-40 was found not to bar a plaintiff's suit for medical retirement benefits when the plaintiff had received clemency and thus did not have a punitive discharge reflected on his official record. 150 Fed. Cl. 552, 560-61 (2020), *rev'd on other grounds*, 43 F.4th 1357 (Fed. Cir. 2022). The defendant did not appeal this aspect of the decision, and the Federal Circuit "d[id] not discern error in it." *Labonte*, 43 F.4th at 1368. Unlike the plaintiff in *Labonte*, however, the plaintiff is still under a sentence of a dishonorable discharge without any indication that he has received any form of clemency.

Notwithstanding AR ¶ 4-3(e), the plaintiff argues that AR 635-40 ¶ 5-7(b) and (d)(1) requires he be medically retired. (Pl. Resp. at 4-9.) Paragraph 5-7(b) provides that "[n]otwithstanding paragraph 5–7a, when a Soldier has a combined rating of 80 percent or greater for a permanent and stable condition (or conditions) not related to a diagnosis of a mental disorder due to traumatic stress, the Soldier will be permanently retired." Paragraph 5-7(d)(1) echoes this requirement.

This language, however, cannot be read in a vacuum and must be considered in conjunction with ¶ 4-3(e). Reading these provisions together, the best way to give them all effect is to understand that ¶ 5-7(b) and (d)(1) set forth a general rule, whereas ¶ 4-3(e) is a specific exception. Paragraph 5-7(b) sets forth a general rule regarding the retirement of disabled soldiers, notwithstanding anything in ¶ 5-7(a). Similarly, ¶ 5-7(d)(1) sets forth a requirement to comply with 10 USC § 1216a and Title 38 of the Code of Federal Regulations by providing a general rule that disabled soldiers will be retired. Paragraph 4-3(e), however, addresses the far narrower situation in which a disabled soldier is also under a sentence handed down by a court-martial. In such a case, a soldier may not "be referred for, or continue in, disability processing." This text makes clear that ¶ 4-3(e) is intended to operate as an exception to the usual situations in which a soldier would be medically retired. Under the plaintiff's reading of the Army regulations, however, this provision would serve no function. In any case, to the extent these three provisions conflict, ¶ 4-3(e) is the more specific provision, directly applicable to the plaintiff's situation, and accordingly it controls the outcome. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183-88 (the General/Specific Canon) (2012).

In the absence of any clemency, the plain language of AR 635-40 controls: the plaintiff is not eligible for medical retirement benefits unless and until he receives some form of clemency that removes the punitive discharge from his records. Until such time, the plaintiff's case must be dismissed for failure to state a claim.

## VI.    CONCLUSION

The defendant's motion to dismiss (ECF 10) is **GRANTED**. Even construed liberally, the aspects of the complaint challenging the plaintiff's court-martial are not within the limited jurisdiction of the Court of Federal Claims. Those claims are **DISMISSED** without prejudice pursuant to RCFC 12(b)(1) and 12(h)(3). The remaining aspects of the plaintiff's complaint fail to state a claim for relief and are **DISMISSED** pursuant to RCFC 12(b)(6). The Clerk is **DIRECTED** to enter judgment accordingly. No costs are awarded.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**