# In the United States Court of Federal Claims

No. 21-2016C
Filed: August 27, 2024
NOT FOR PUBLICATION

---

**SEAN J. DILLON,**

                        *Plaintiff,*

**v.**

**UNITED STATES,**

                        *Defendant.*

---

## MEMORANDUM OPINION AND ORDER

*HERTLING*, Judge

The plaintiff, Sean J. Dillon, an inmate at the United States Disciplinary Barracks, Fort Leavenworth and a former soldier in the United States Army ("Army"), proceeding *pro se*, filed this action on October 7, 2021. The plaintiff claimed he was entitled to a medical disability retirement because he was ordered to be medically retired, notwithstanding the fact that the retirement order was revoked, and he was subsequently court-martialed, convicted of several offenses against the Uniform Code of Military Justice ("UCMJ"), and dishonorably discharged.

The defendant moved to dismiss the complaint. After several delays and extensions, the case was transferred to the undersigned. Even though the motion had been fully briefed, the parties were given the opportunity to file supplemental briefs on the pending motion. The plaintiff requested and received an extension until June 28, 2024, to file his supplemental brief. No supplemental brief from the plaintiff was received by that date.

The motion to dismiss was granted on July 1, 2024. The claim that the plaintiff had been medically retired as of November 30, 2015, prior to his 2016 court-martial, was held to be outside the jurisdiction of the Court of Federal Claims as an impermissible collateral attack on the court-martial conviction. The claim that the plaintiff should have been medically retired, notwithstanding his court-martial conviction, was held not to state a claim upon which relief could be granted because Army Regulation ("AR") 635-40 ¶ 4-2 (2006) prevented the finalization of his retirement on a disability when his record reflected that he was dishonorably discharged. *Dillon v. United States*, No. 21-2016, 2024 WL 3262822 (Fed. Cl. July 1, 2024).

On July 10, 2024, the court received from the plaintiff the supplemental brief that had been due by June 28, 2024 ("Pl. July 10 filing"). The plaintiff's brief was construed and filed as a motion for reconsideration under Rule 59 of the Rules of the Court of Federal Claims ("RCFC"). On July 22, 2024, the court received a filing from the plaintiff labeled a "Motion for

Reconsideration Rule 59." That submission was ordered to be filed and construed as a supplemental brief on the Rule 59 motion ("Pl. July 22 filing"). The defendant was ordered to reply to both filings and did so on August 13, 2024 ("Def. Aug. 13 filing").

The plaintiff argues that, in granting the motion to dismiss, the Court made several legal errors that justify reconsideration. Principally, the plaintiff argues that, once the Army found him to be entitled to a medical retirement, 10 U.S.C. §§ 1201 & 1202 required that he receive a medical discharge, and the Court's contrary finding that AR 635-40 ¶ 4-2 (2006) prevented the plaintiff from continuing in and receiving a medical retirement was mistaken.[1] (Pl. July 22 filing at 3-14.) The plaintiff relies on the fact that the Secretary of the Army had approved his medical retirement and contends this approval meant no further disability processing was required. Accordingly, AR 635-40 ¶ 4-2 (2006) could not block that retirement. (*Id.* at 6.)

The plaintiff also argues that 10 U.S.C. § 1202 is mandatory. This section provides that once a soldier is found to qualify for a disability retirement under 10 U.S.C. § 1201, "the Secretary shall . . . place the member's name on the temporary disability retired list, with retired pay computed under section 1401 of this title." Therefore, the statute prohibited the Army from taking any action except to effectuate that disability retirement decision. (*Id.* at 7.) He argues that no regulations authorized the revocation of his retirement orders, and that, in any case, regulations cannot be used to avoid the mandatory obligations of §§ 1201 & 1202. (*Id.* at 9-14; *see also* Pl. July 10 filing at 9-19, 21-25.)

Additionally, the plaintiff argues that the Court erred in finding that it lacked jurisdiction to consider his claim that he was medically retired as of November 30, 2015, because he "is not challenging the judgment of a court-martial . . . but is challenging illegal agency action" in voiding his "disability determination to run-around the non-discretionary commandments of 10 U.S.C. § 1202 . . . ." (Pl. July 22 filing at 4-5 (emphasis omitted).) Nevertheless, the plaintiff claims that, if the plaintiff's disability status were "retroactively restore[d]," then "this action must necessarily void a court-martial because it has no jurisdiction" over soldiers placed in disability retirement. (*Id.* at 5-6.)

In response, the defendant argues that the dismissal was correct, largely for the reasons offered in the Court's July 1st opinion. (Def. Aug. 13 filing at 4-8.) To the extent that the plaintiff raises a new argument that 10 U.S.C. § 1201 required that the plaintiff be medically retired, the defendant argues the argument comes too late and, in any case, is based on an erroneous interpretation of *Fisher v. United States.* (Def. Aug. 13 filing at 6-7 (citing *Fisher*, 402 F.3d 1167, 1174-75 (2005) (holding that 10 U.S.C. § 1201 is a money-mandating statute even for members of the military administratively determined not to qualify for benefits).) The defendant adds that the plaintiff "offers no support for the proposition that he can somehow

---

[1] That 2006 regulation is embodied in AR 635-40 ¶ 4-3(e) under the current version of the regulations.

escape the consequences of Army Regulation 635-40 ¶ 4-2 even though he was not yet medically retired." (*Id.*)

"A motion for reconsideration is a request for extraordinary relief and is not to be used by a dissatisfied party to relitigate the case." *Young v. United States*, 94 Fed. Cl. 671, 674 (2010) (citing, *inter alia*, *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004)). "Under Rule 59(a)(1), a court, in its discretion, 'may grant a motion for reconsideration when there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or legal error or prevent manifest injustice.'" *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting *Young*, 94 Fed. Cl. at 674). Further, "[a] motion for reconsideration must also be supported 'by a showing of extraordinary circumstances which justify relief.'" *Id.* (quoting *Caldwell*, 391 F.3d at 1235).

The plaintiff has not raised any issue of fact or law demonstrating any error as to the dismissal of his claims. Therefore, his motion for reconsideration is denied.

### 1.    Jurisdiction

The plaintiff contends he is merely seeking to establish that he was entitled to medical retirement on November 30, 2015, prior to the initiation of the court-martial, in accordance with his original retirement order. To that end, the plaintiff contends he is not seeking to overturn the court-martial's findings or collaterally attack them; rather, he claims he is "challenging illegal agency action" in voiding his "disability determination to run-around the non-discretionary commandments of 10 U.S.C. § 1202 . . . ." (Pl. July 22 filing at 4-5 (emphasis omitted); *see also id.* at 8-9 (the plaintiff arguing that he could cure the identified jurisdictional defect by amending his complaint).) The plaintiff acknowledges, however, that were he successful in his suit and his records updated to reflect medical retirement on November 30, 2015, "this action must necessarily void [his] court-martial because it ha[d] no jurisdiction" over him.[2] (*Id.* at 5-6.) The plaintiff also argues that "the U.S. Army did not in fact revoke the disability determination or the medical discharge order" (*id.* at 15), but this too is contrary to the court-martial's finding that the notification of the plaintiff's medical retirement was "'invalid,'" (Compl. at ¶ 38). The plaintiff's own filings therefore reflect that he is seeking to challenge in this court the findings of the court-martial and his conviction.

For the Court of Federal Claims to review a decision by a court-martial, a plaintiff must, among other things, show a lack of fundamental fairness in the court-martial proceedings. *Matias v. United States*, 19 Cl. Ct. 635, 642, *aff'd*, 923 F.2d 821 (Fed. Cir. 1990). The plaintiff has failed to proffer any reason to find clear error in the Court's previous conclusion that the

---

[2] The plaintiff is likely incorrect that military jurisdiction is lost over military retirees. *See Larrabee v. Del Toro*, 45 F.4th 81, 96 (D.C. Cir. 2022), *cert. denied*, 144 S. Ct. 277 (2023). Regardless of the merits of the plaintiff's argument, the plaintiff is attempting to challenge the findings of his court-martial, including the finding that he was not retired. Such a challenge is generally outside the jurisdiction of the Court of Federal Claims.

plaintiff's court-martial did not lack fundamental fairness.  At best, the plaintiff has attempted to argue that the presiding judge of his court-martial was retroactively decertified and unqualified to serve as a judge because, after the plaintiff's court-martial, he was disciplined and demoted for misconduct unrelated to the plaintiff's case.  (Pl. July 10 filing at 4 n.2; Pl. July 22 filing at 4-5 & 5 n.2.)  Even accepting the plaintiff's argument that the presiding judge could be retroactively decertified, a proposition for which the plaintiff provides no support, he has not cited any provision of law or regulation which holds that the alleged resulting demotion of the presiding judge to the rank of major retroactively rendered him unqualified.  Neither 10 U.S.C. § 826(b) nor Rule 502(c) of the Rules for Courts-Martial, which govern the qualifications of military judges, required the plaintiff's presiding judge to have been a lieutenant colonel.  *See also* AR 27-10 ¶ 7-2 (listing the qualifications required of military judges without referencing a rank requirement).

The plaintiff has not shown that his trial lacked fundamental fairness or explained why the subsequent appeals could not fairly address the plaintiff's jurisdictional challenge to the court-martial.  He therefore has failed to present a necessary element of any collateral attack on a court-martial within the jurisdiction of the Court of Federal Claims.  Accordingly, the Court may not review the court-martial's determination, which necessarily implicated the question of whether the orders revoking the plaintiff's retirement were effective, that the plaintiff had not been medically retired as of November 30, 2015.

## 2.    The Merits of the Plaintiff's Collateral Attack.

Even if the plaintiff were permitted to amend his complaint, and the Court were able to reach the merits of the plaintiff's claim that he was entitled to a medical retirement on November 30, 2015, the plaintiff would not prevail.  The plaintiff would have to show that the order revoking his medical retirement was improper.  This he cannot do.  The revocation order cited AR 635-40 (2006) as the source of authority for the action.  (Def. Mot. to Dismiss Ex. A at 2.)  AR 635-40 ¶ 4-1 (2006) prohibited any soldier "charged with an offense under the [UCMJ] or who is under investigation for an offense chargeable under the UCMJ which could result in dismissal or punitive discharge" from being "referred for, or continu[ing], disability processing unless" the investigation ended with no charges, any charges were dismissed, or any charges were referred to a court-martial that could not impose a dismissal or punitive discharge.  *See Moyer v. United States*, 190 F.3d 1314, 1321 (Fed. Cir. 1999) ("We agree with the Court of Federal Claims that . . . [an earlier version of AR 635-40] expressly precludes continued disability processing for soldiers charged under the UCMJ.").

The plaintiff argues that AR 635-40 could not block his medical retirement because he had already completed disability processing, and having done so, 10 U.S.C. § 1201 mandated he be medically retired, notwithstanding any contrary regulation.

The plaintiff cites no statute or regulation that reflects that disability processing ends with the approval of a disability retirement.  Conversely, AR 635-40 Appendix E-9 (2006) provides instructions for final disposition, which take place "[a]fter final approval" of a disability determination.  These steps must be taken in accordance with "AR 635-10 [which] establishes

procedures for processing [s]oldiers for retirement or discharge," as supplemented by AR 635-40 Appendix E-9 (2006).

Other provisions, including AR 635-40 Appendix E-10–E-14 (2006), govern additional steps regarding the preparation, distribution, and delivery of separation orders and documents. These steps are central to finalizing a soldier's separation for disability from the Army and demonstrate that disability processing continues until such time as a soldier is medically retired. While the plaintiff's disability evaluation may have been completed by November 3, 2015, the day his retirement orders were revoked (Def. Mot. to Dismiss Ex. A at 2), he had not yet been retired.  Because he was not retired on the day the Army revoked his impending disability retirement (Compl. at ¶ 38), AR 635-40 ¶ 4-1 (2006) required the Army to revoke his retirement order because he was still "continu[ing] disability processing."

The plaintiff's argument that 10 U.S.C. § 1201 mandated that he be retired is equally flawed.  First, the statute does not establish a timeline by which a soldier must be retired.  As a result, the statute and AR 635-40 ¶ 4-1 (2006) are not in conflict because the regulation requires a delay in finalizing a disability retirement.  Likewise, no relevant regulations impose a date by which a soldier's disability retirement must become effective.  Instead, AR 635-40 Appendix E-9 (2006) (emphasis added) provides that the "[d]ate of retirement will *usually* be 20 days from the date of secretarial approval of the determination of unfitness advanced by the number of days of accrued leave which cannot be sold back to the Government."[3]  Indeed, the plaintiff was not ordered to be retired within 20 days of the Secretary of the Army's approval of his disability retirement.  That approval occurred in April 2015, but the plaintiff was ordered to retire months later, on November 30, 2015, and he does not contest that delay.  (Compl. at ¶ 30.)  The regulations establish a baseline for when a retirement will usually become effective but do not provide an entitlement that a retirement must happen in that timeframe.  A soldier approved for a medical disability retirement facing a criminal investigation and then a court-martial presents an unusual circumstance that could justify a further departure from the usual retirement timeframe.

Second, 10 U.S.C. § 1201 sets forth eligibility requirements that a soldier approved for a medical retirement could fail to meet before an approved retirement becomes effective.  Aside from two exceptions not relevant here, to be eligible for retirement under 10 U.S.C. §§ 1201 & 1202, a soldier must be "[a] member of a regular component of the armed forces entitled to basic pay."  *Id.* § 1201(c)(1).  The UCMJ provides that a court-martial sentence that includes either (1) "confinement for more than six months or death" or (2) less than six months of confinement and a dishonorable or bad-conduct discharge or dismissal, "shall result in the forfeiture of pay, or of pay and allowances, due that member during any period of confinement or parole."  10 U.S.C. § 858b.  Interpreting 10 U.S.C. § 1201 to forbid the suspension of the disability retirement of a

---

[3] The plaintiff's submissions quoting this regulation omit the word "usually."  (Pl. July 10 filing at 16; Pl. July 22 filing at 12.)  The plaintiff also ignores the parallel language in AR 635-40 ¶ 3-14(a) (emphasis added) that "[s]eparation or retirement should *normally* occur within 20 days of the date of the final determination of unfitness by the [Secretary of the Army]," even though he quotes it in his initial brief.  (Pl. July 10 filing at 16.)

soldier who is charged with an offense that could result in a loss of entitlement to pay when such a sentence would render the soldier ineligible for the disability retirement under the same statute is unreasonable.  Prior cases have recognized that disability retirement decisions may be reconsidered in the face of "fraud, mistake, or new evidence."  *Wason v. United States*, 179 Ct. Cl. 623, 629 (1967).  A court-martial sentence that renders a soldier ineligible for a medical retirement would be conclusive; suspension of any prior approval for a medical disability retirement by regulations like AR 635-40 ¶¶ 4-1 & 4-2 (2006) effectuates such determinations.

Finally, accepting the plaintiff's argument would mean that the military could not effectively enforce the UCMJ against soldiers between the approval of their disability retirement and their actual separation from the military.  According to the plaintiff, any soldier who committed a UCMJ offense after their disability separation was approved could not be punished with a punitive discharge.  This reading of the law would render ineffective the statutorily prescribed punishment of a dismissal or dishonorable discharge permitted or required by Congress in 10 U.S.C. § 856 and other UCMJ provisions and would undermine the good order and discipline of the armed forces.  Such an interpretation of 10 U.S.C. § 1201 is not required by the text of the statute and is unreasonable.  *Cf. Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The need for special regulations in relation to military discipline . . . is too obvious to require extensive discussion; no military organization can function without strict discipline and regulation that would be unacceptable in a civilian setting."); *Loving v. United States*, 517 U.S. 748, 768 (1996) (noting that Congress is given "the highest deference in ordering military affairs").[4]

### 3.      Failure to State a Claim

For similar reasons, the plaintiff's argument that he was still entitled to a medical retirement after his conviction must be rejected because AR 635-40 ¶ 4-3(e), the current iteration of AR 635-40 ¶ 4-2 (2006), prevents a dishonorably discharged veteran from being approved for a disability retirement.  Any argument that this regulation conflicts with 10 U.S.C. § 1201 suffers from the same defect on which the plaintiff's challenge to his conviction founders with regards to AR 635-40 ¶ 4-1 (2006).

Additionally, the plaintiff has not provided any reason to conclude that soldiers are entitled to disability pay until such time as they are in fact retired from the Army, which the plaintiff never was.  To put it plainly, there appears to be no authority to support the plaintiff's basic argument that a soldier who is dishonorably discharged is eligible for and can simultaneously leave the military by means of a disability retirement.  While mechanisms exist

---

[4] To the extent the plaintiff has invoked the so-called veterans canon of construction (Pl. July 22 filing at 23), the canon is inapplicable because the relevant statutes are unambiguous.  *See Rudisill v. McDonough*, 601 U.S. 294, 314 (2024) ("If the statute were ambiguous, the pro-veteran canon would favor [the plaintiff], but the statute is clear, so we resolve this case based on statutory text alone."); *Brown v. Gardner*, 513 U.S. 115, 118 (1994) (explaining "the rule that interpretive doubt is to be resolved in the veteran's favor").

for later modifying the plaintiff's records after his discharge, the plaintiff has not shown that he is entitled to such a correction of his record because he has not shown that he was required to be medically retired by any specific date.  Rather, the plaintiff was approved for a disability retirement, but his retirement was blocked before it became effective by AR 635-40 ¶ 4-1 (2006). He then lost his eligibility for disability retirement under AR 635-40 ¶ 4-2 and 10 U.S.C. § 1201 after he was sentenced by court-martial to almost 30 years of confinement and a dishonorably discharge.  *See Lowe v. United States*, 79 Fed. Cl. 218, 231 (2007) (finding that 10 U.S.C. § 1212 did not "authorize, let alone mandate, payment for service members separated other than by the" statute).

Current regulations continue to incorporate this restriction against medically retiring dishonorably discharged soldiers. "Soldiers may not be referred for, or continue in, disability processing if under military sentence of dismissal or punitive discharge unless the sentence is suspended."  AR 635-40 ¶ 4-3(e).  In fact, the current regulations are even more explicit and provide that "[t]he [s]oldier may not be discharged through the [Disability Evaluation System] process until the period of suspension has ended and the punitive discharge or dismissal has been disapproved."  *Id.*

Until such time as the plaintiff's dishonorable discharge is upgraded, or until such time as regulations provide otherwise, the plaintiff cannot state a claim for a disability discharge.  The plaintiff cannot amend his complaint to avoid these restrictions, and thus any attempt to amend his complaint would be futile.[5]

The plaintiff has not shown that the July 1, 2024, decision dismissing the plaintiff's complaint suffers from clear error, and the plaintiff's motion for reconsideration pursuant to Rule 59 (ECF 49) is **DENIED**.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[5] To the extent the plaintiff raises other arguments, the Court has considered these and finds them unpersuasive.  For example, the plaintiff invokes the liberal consideration policy for requests made to record correction boards for discharge upgrades where the service member suffered from post-traumatic stress disorder ("PTSD").  (Pl. July 10 filing at 6-9.)  This policy only applies to correction boards.  10 U.S.C. § 1552.  Notably, the plaintiff does not seek review of his discharge by arguing that his PTSD and two traumatic brain injuries which led to his initial approval for a medical retirement (Compl. at ¶ 24) contributed to his discharge.  Instead, he is arguing that his dishonorable discharge was improper in the first instance due to a lack of jurisdiction and the requirement that he be medically retired under 10 U.S.C. § 1201.  (Pl. July 22 filing at 3-8.)